IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DEVON FRYE,

        **Plaintiff,**

v.                                             Civil Action No. 3:22cv536

JASON WILSON, *et al.*,

        **Defendants.**

## MEMORANDUM OPINION

Devon Frye, a Virginia detainee proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to 42 U.S.C. § 1983.[1] The matter is now before the Court on the Motion to Dismiss filed by Defendants Jason Wilson and Ella Turner ("Defendants") (ECF No. 12) and the Court's screening obligations under 28 U.S.C. § 1915(e)(2). Defendants provided Frye with *Roseboro* notice.[2] (ECF No. 14.) Frye has filed a Response (ECF No. 15)[3] and Defendants have

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

[3] In his Response, Frye appears to add a First Amendment claim. However, Frye did not raise a claim alleging his First Amendment rights were violated in his Complaint. To the extent that he intends to add such a claim in his Response, he may not do so. "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss. To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (internal citations omitted) (internal quotation marks omitted).

filed a Reply (ECF No. 16). For the reasons stated below, the Motion to Dismiss will be DENIED.

## I. Legal Standard

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

2

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his or her complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Frye's Allegations

Frye is civilly committed in the Virginia Center for Behavioral Rehabilitation ("VCBR"). (ECF No. 1, at 3.) In his Complaint, Frye alleges as follows:[4]

---

[4] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in quotations from the parties' submissions.

3

On September 30, 2021, Plaintiff Frye signed Facility Instruction No: 108 (Facility Rules and Resident Privileging Levels) in acknowledgment of receiving a copy of minor and major rule infractions. (Exhibit A).

Residents (patients) are expected to progress through each of the three phases of treatment. There are specific tasks that must be accomplished for each phase, as well as specific positive behaviors that must be consistently demonstrated for a set period of time before the resident (patient) moves to the phase. Each quarter in treatment is three months long. In order to progress to Phase Two, the resident (patient) must consistently meet the behavioral expectations for the two consecutive quarters. In order to progress to Phase Three, a resident (patient) must consistently demonstrate all behavioral goals for three consecutive quarters. Treatment is not considered complete until all three phases have been achieved, and maintained until the committing court authorizes conditional release or discharge.

Treatment participation will be documented and provided to the committing court at the resident's annual review.

Observation notes are included in court documents to be reviewed by civil commitment judge and attorney general for the Commonwealth of Virginia. Observation notes influence their opinion on continued involuntary in-patient treatment.

On July 6, 2022, Defendant Turner documented an observation note about the Plaintiff making three-way phone calls, in violation of Facility Rules. (Exhibit B).

At the time of the observation note, dated July 6, 2022, there was no policy in place establishing that three-way calls were not prohibited. Nor was there any facility rule in place stating that three-way calling was prohibited.

On July 8, 2022, Plaintiff Frye filed a request for correction/amendment of services record in an attempt to challenge the accuracy and correctness of the July 6, 2022 observation note. (Exhibit C).

A request for correction/amendment of services record is the standard recourse to challenge any observation note that describes a minor or major rule infraction.

Residents (patients) at VCBR do not have a disciplinary process for minor or major rule infractions that comports to constitutional requirements for due process.

Jason Wilson is the Director of the VCBR and as such he has the authority to recommend and/or implement systematic changes to ensure protection of each resident's (patient's) constitutional rights.

(ECF No. 1, at 6–7 (paragraph numbers omitted).) Frye requests monetary damages and a "preliminary and permanent injunction to suspend the use of observation notes as a disciplinary procedure until proper constitutional safeguards are implemented." (ECF No. 1, at 8–9.)

Although through Frye's statement of his "Legal Claims," it is not entirely clear what claims Frye is attempting to raise, the Court identifies the following claims for relief:

> Claim One: "The procedures used by VCBR officials to issue and adjudicate disciplinary reports (observation notes) created a constitutionally untenable risk of improper discipline that directly affects the liberty interest of continued involuntary civil commitment." (ECF No. 1, at 7.)
>
> Claim Two: "Defendant Turner violated Plaintiff's Fourteenth Amendment constitutional right to due process[5] by issuing him an observation note and penalizing him without an adequate hearing. . . . Because each observation note goes to the Attorney General and the judge who committed the Plaintiff to involuntary commitment, it effectively serves as something that can and does affect when he will be released from confinement." (ECF No. 1, at 7)[6]
>
> Claim Three: "Defendant Turner has violated Plaintiff's Fourteenth Amendment right to equal protection of the law[7] by enforcing a disciplinary process that violates his right to due process." (ECF No. 1, at 8.)

### III. Analysis

#### A. Claim Three Lacks Facial Merit

In Claim Three, Frye contends that "Defendant Turner has violated Plaintiff's Fourteenth Amendment right to equal protection of the law by enforcing a disciplinary process that violates his right to due process." (ECF No. 1, at 8.) Frye fails to allege sufficient facts to make out a

---

[5] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[6] Although Frye did not explicitly raise this in the Legal Claims section, it appears that he also contends that there was nothing in the Facility Rules forbidding him from three-way calling.

[7] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

plausible equal protection claim. "The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In order to state an equal protection claim, Frye must allege that: (1) that he and a comparator civil committee were treated differently and were similarly situated; and (2) that the different treatment was the result of discrimination. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted). Frye fails to allege even the first element of the inquiry. Frye identifies no comparator civil committee that was similarly situated who was treated differently than him. To the contrary, Frye complains that the disciplinary procedures the VCBR uses for all civil committees is unfair. Therefore, Frye fails to allege facts suggesting that Defendant Turner violated his equal protection rights. Accordingly, Claim Three Lacks merit and will be DISMISSED.[8]

### B. The Motion to Dismiss

In their Motion to Dismiss, Defendants argue that:

> In order to prevail on a due process claim, "inmates must first demonstrate that they were deprived of 'life, liberty, or property,' by governmental action." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997). A prison disciplinary action implicates a liberty interest requiring due process safeguards when the punishment imposed inflicts an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). The determination of whether such an atypical and significant hardship exists is a question of law. *Beverati*, 120 F.3d at 503.
>
> In the case at hand, Frye has failed to allege a discernable constitutional right that would invoke a § 1983 claim. Simply put, Frye has no right to make three-way calls to inmates in other facilities, and he has no right to force Turner or VCBR to change the actions observed in the note. Frye engaged in the "appellate" process to have the note reviewed for accuracy, but at no point does Frye dispute the actions that are documented in the observation note. (*See generally* Compl.) Frye's loss of privileges to continue to three-way call is not an atypical or

---

[8] To the extent that Frye raises a due process claim in Claim Three, it appears to be duplicative of Claim One. Accordingly, the Court will review any due process challenge to the disciplinary procedure in conjunction with Claim One.

significant hardship on him. Frye does not assert that the observation note has affected his standing before the Court, or even at VCBR itself, in fact, the note indicates that the number was blocked. (*Id.*) Frye presents no actual effects or acts depriving him of liberty, the only discernable allegation being that the reviewing judge may see this specific note during the review process. There is no specific connection between the observation note and his continued detainment.

Thus, Frye has asserted no rights, including a liberty interest, by which this Court could rely upon to grant him relief, has not sufficiently pled any constitutional or statutory violations, and even if this Court were to permit Frye to amend his Complaint, the facts do not change.

(ECF No. 13, at 4–5.) As discussed below, at this juncture, the Court is not persuaded by the Defendants' arguments.

### 1. **Defendants Have Not Explained Why *Sandin* Applies**

Frye contends that Defendants violated his procedural due process rights in two ways. First, Frye argues that the procedure for observation notes[9] creates a risk of improper discipline that directly implicates a liberty interest in not remaining civilly committed indefinitely. Second, Frye argues that he was denied procedural due process when the observation note, pertaining to three-way calls, was entered into his record without an adequate hearing and that because the judge who committed him reviews his record, this implicates a liberty interest in not remaining civilly committed indefinitely.

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify

---

[9] "An observation note is part of a detainee's treatment record and documents behavior, including behavior related to phase goals, behavior related to violations of rules and privileges, and refusals of medical appointments, medication, and meals." *Hairston v. Wilson*, No. 1:19cv862 (AJT/MSN), 2021 WL 2640803, at *1 (E.D. Va. June 24, 2021) (citation omitted).

whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself, or from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005) (citations omitted). Throughout the Motion to Dismiss, Defendants cite Fourteenth Amendment law that pertains specifically to convicted inmates. *See* ECF No. 13, at 4 (citing *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997); *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). However, Frye is not an inmate. Rather, Frye is civilly committed, and Defendants fail to explain why the law for convicted inmates would be applicable here. *See Christian v. Magill*, 724 F. App'x 184, 188 (4th Cir. 2018); *Dilworth v. Adams*, 841 F.3d 246, 251 (4th Cir. 2016) (explaining that *Sandin* "has no application to pretrial detainees"). "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). The Fourth Circuit has explicitly "borrow[ed] from the pretrial-detainee context the standard for constitutionally impermissible 'punishment,'" and applied it those civilly committed. *Matherly v. Andrews*, 859 F.3d 264, 275 (4th Cir. 2017).

Thus, evaluating Frye's due process claims requires a two-part inquiry, first, whether Frye has been deprived a liberty interest triggering procedural due process, and second, whether the procedures afforded Frye satisfied those rights. *See Dilworth*, 841 F.3d at 250–51 (4th Cir. 2016); *Christian*, 724 F. App'x at 188 ("[A]s we concluded in *Dilworth* with respect to pretrial detainees, civilly committed individuals are similarly entitled to procedural due process protections in connection with any punishment imposed on them." (citing *Dilworth*, 841 F.3d at

251; *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979))). At this juncture, the Court concludes that Defendants have not demonstrated that this claim should be dismissed.

### 2. Defendants Fail to Explain Why the Court Can Review Extrinsic Evidence

Second, the Motion to Dismiss relies on evidence not contained in the body of the Complaint. "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (citations omitted).

Defendants rely on the exhibits attached to the Complaint, including program rules (ECF No. 1-1, at 1–3); the observation note (ECF No. 1-1, at 4–5); and his Request for Correction/Amendment of Services Record (ECF No. 1-1, at 5). When reviewing a motion to dismiss, the Court may consider materials outside of the pleadings if the materials are "integral to and explicitly relied on in the complaint." *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (citation omitted). Defendants fail to provide any authority that would allow this Court to review evidence outside of the Complaint in the context of a Motion to Dismiss in this instance. Accordingly, the Court declines to review the exhibits to the Complaint in the context of a Motion to Dismiss.

## IV. Conclusion

For the foregoing reasons, Claim Three will be DISMISSED. The Motion to Dismiss (ECF No. 12) will be DENIED. Any party wishing to file a motion for summary judgment should do within sixty (60) days of the date of entry hereof.

An appropriate Order will accompany this Memorandum Opinion.

Date: 12/6/2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

10