IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DEVON FRYE,

    **Plaintiff,**

v.                                                          Civil Action No. 3:22cv536

JASON WILSON, *et al.*,

    **Defendants.**

## MEMORANDUM OPINION

Devon Frye, a Virginia detainee proceeding *pro se* and *in forma pauperis*, filed this civil action pursuant to 42 U.S.C. § 1983.[1] The matter is now before the Court on the Motion for Summary Judgment filed by Mr. Frye, (ECF No. 19), and the Motion for Summary Judgment filed by Defendants Jason Wilson and Ella Turner ("Defendants"), (ECF No. 25). Mr. Frye was provided with *Roseboro* notice.[2] (ECF No. 27.) Mr. Frye has filed a Response to Defendant's Motion for Summary Judgment ("Response"), (ECF No. 31), and Defendants have replied, (ECF No. 32). For the reasons stated below, Defendants' Motion for Summary Judgment, (ECF No. 25), will be GRANTED.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

## I. Procedural History, Allegations, and Claims

Mr. Frye is civilly committed as a sexually violent predator ("SVP") under Virginia law in the Virginia Center for Behavioral Rehabilitation ("VCBR"). (ECF No. 1, at 3.) In his Complaint, Mr. Frye alleges as follows:[3]

On September 30, 2021, Plaintiff Frye signed Facility Instruction No: 108 (Facility Rules and Resident Privileging Levels) in acknowledgment of receiving a copy of minor and major rule infractions. (Exhibit A).

Residents (patients) are expected to progress through each of the three phases of treatment. There are specific tasks that must be accomplished for each phase, as well as specific positive behaviors that must be consistently demonstrated for a set period of time before the resident (patient) moves to the [next] phase. Each quarter in treatment is three months long. In order to progress to Phase Two, the resident (patient) must consistently meet the behavioral expectations for the two consecutive quarters. In order to progress to Phase Three, a resident (patient) must consistently demonstrate all behavioral goals for three consecutive quarters. Treatment is not considered complete until all three phases have been achieved, and maintained until the committing court authorizes conditional release or discharge.

Treatment participation will be documented and provided to the committing court at the resident's annual review.

Observation notes are included in court documents to be reviewed by civil commitment judge and attorney general for the Commonwealth of Virginia. Observation notes influence their opinion on continued involuntary inpatient treatment.

On July 6, 2022, Defendant Turner documented an observation note about the Plaintiff making three-way phone calls, in violation of Facility Rules. (Exhibit B).

At the time of the observation note, dated July 6, 2022, there was no policy in place establishing that three-way calls were not prohibited. Nor was there any facility rule in place stating that three-way calling was prohibited.

On July 8, 2022, Plaintiff Frye filed a request for correction/amendment of services record in an attempt to challenge the accuracy and correctness of the July 6, 2022 observation note. (Exhibit C).

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation in quotations from the parties' submissions.

2

>  A request for correction/amendment of services record is the standard recourse to challenge any observation note that describes a minor or major rule infraction.
>
>  Residents (patients) at VCBR do not have a disciplinary process for minor or major rule infractions that comports to constitutional requirements for due process.
>
>  Jason Wilson is the Director of the VCBR and as such he has the authority to recommend and/or implement systematic changes to ensure protection of each resident's (patient's) constitutional rights.

(ECF No. 1, at 6–7 (paragraph numbers omitted).) Mr. Frye requests monetary damages and a "preliminary and permanent injunction . . . to suspend the use of observation notes as a disciplinary procedure until proper constitutional safeguards are implemented." (ECF No. 1, at 8–9.)

Although through Mr. Frye's statement of his "Legal Claims," it is not entirely clear what claims Mr. Frye is attempting to raise, the Court previously culled his Complaint and identified the following claims for relief:

> Claim One: "The procedures used by VCBR officials to issue and adjudicate disciplinary reports (observation notes) created a constitutionally untenable risk of improper discipline that directly affects the liberty interest of continued involuntary civil commitment." (ECF No. 1, at 7.)
>
> Claim Two: "Defendant Turner violated Plaintiff's Fourteenth Amendment constitutional right to due process[4] by issuing him an observation note and penalizing him without an adequate hearing. . . . Because each observation note goes to the Attorney General and the judge who committed the Plaintiff to involuntary commitment, it effectively serves as something that can and does affect when he will be released from confinement." (ECF No. 1, at 7)[5]

---

[4] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[5] Although Mr. Frye did not explicitly raise this in the Legal Claims section, it appears that he also contends that there was nothing in the Facility Rules forbidding him from three-way calling.

3

> Claim Three: "Defendant Turner has violated Plaintiff's Fourteenth Amendment right to equal protection of the law[6] by enforcing a disciplinary process that violates his right to due process." (ECF No. 1, at 8.)

By Memorandum Opinion and Order entered on December 6, 2023, the Court dismissed Claim Three because it lacked merit. (ECF Nos. 17, 18.) The Court denied Defendants' Motion to Dismiss with respect to Claims One and Two and set the time for the parties to file a motion for summary judgment. (ECF No. 18, at 1.) Both Mr. Frye and Defendants have moved for summary judgment. (ECF Nos. 19, 25.) Upon the Court's initial review of the Defendants' Motion for Summary Judgment, the Court ordered Defendants to provide further evidence. (ECF Nos. 35, 37.) Defendants have complied with that directive. (ECF No. 40.) Mr. Frye filed a response to Defendants' supplemental brief. (ECF No. 41.)

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

---

[6] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

4

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Similarly, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants have submitted: VCBR Facility Instruction No. 136, Annual Review Reporting, (ECF No. 26-1); relevant Facility Rules & Resident Privileging Levels, (ECF No. 26-2); an Observation Note from July 6, 2022, (ECF No. 26-3); and, an Affidavit of Defendant Turner,[7] (ECF No. 40-1).

---

[7] Defendant Turner is now Ella Moses. However, the Court continues to refer to Ms. Moses as Defendant Turner for the sake of consistency.

5

At this stage, the Court is tasked with assessing whether Mr. Frye "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Of course, the facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). The sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Mr. Frye filed his own Brief in Support of Motion for Summary Judgment, (ECF No. 19), a Response, (ECF No. 31), and a Response to the Supplemental Brief, (ECF No. 41), but no sworn statement. While Mr. Frye's Complaint is not properly sworn,[8] the Court will consider the

---

[8] At the conclusion of his Complaint, Mr. Frye included the following verification:

> I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except those matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

(ECF No. 76, at 27.) Mr. Frye's verification is virtually identical to one that this Court previously rejected in *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, *2–3 (E.D. Va. June 1, 2011), and is substantially similar to one that the United States Court of Appeals for the Fourth Circuit found to be lacking in *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001). Where a verification is made "upon information and belief," it "is insufficient for the purposes of opposing a motion for summary judgment because such verification avoids the possibility of perjury." *Price v. Rochford*, 947 F.2d 829, 832 (7th Cir. 1991); *see also Causey v. Balog*, 162 F.3d 795, 803 n.4 (4th Cir. 1998) (citations omitted) ("Because [the court] cannot assess whether [the plaintiff] had first-hand knowledge of [the alleged] facts or whether he is competent to testify to them, [the court] cannot consider them in [its summary judgment] review."). As such, the Court must consider the contents of Mr. Frye's Complaint as "mere pleading allegations." *Hogge*, 2011 WL 2161100, at *3 (quoting *Walker*, 11 F. App'x at 274). Consequently, the Complaint fails to constitute admissible evidence. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

records attached to it, which are partially duplicative of the records submitted by Defendants, (ECF Nos. 1-1, at 1–5), and the records attached to Mr. Frye's Brief in Support of Motion for Summary Judgment, (ECF No. 20-1 through 20-6).

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Mr. Frye.

### III.  Undisputed Facts

#### A.  Mr. Frye's Violation of Policy

Mr. Frye has been designated an SVP under Virginia law and is a resident under the custody and care of the Virginia Center for Behavioral Rehabilitation ("VCBR"). Defendant Wilson is the facility director for the VCBR. (ECF No. 1, at 1.) Defendant Turner was a former investigator at the VCBR and she was working in that capacity at the time of Mr. Frye's allegations. (ECF No. 40-1 ¶¶ 2–3.) Defendant Turner's duties "included monitoring residents and making note of any violation of the VCBR facility rules or other staff directives in their file." (ECF No. 40-1 ¶ 4.) On September 30, 2021, Mr. Frye signed the document entitled, "Facility Rules & Resident Privileging Levels," indicating that he had "read and understood the [VCBR] Program Rules." (ECF No. 26-2, at 3.) In those rules, Mr. Frye agreed that "[t]he Following behaviors are prohibited at VCBR and will lead to placement on Privilege Level C" and is considered a "**Minor Rule Infraction[]**":

> **Refusal to Follow a Staff Directive:** Residents must follow verbal or written directions from staff in situations in which the safety and security of individuals or the facility may be compromised. (The resident retains their rights to consent or not consent to treatments and services).

(ECF No. 26-2, at 1.)

7

On June 9, 2022, Defendant Turner "observed Mr. Frye orchestrating three-way calls to a correctional facility in Pikesville, TN, to speak to an inmate there, Tabitha Whitlock." (ECF No. 40-1 ¶ 6.) Defendant Turner explains that "[s]uch calls are not permitted in our facility or the correctional facility holding Ms. Whitlock and [Defendant Turner] made both Mr. Frye and the facility holding Ms. Whitlock aware that this activity was not permitted at VCBR." (ECF No. 40-1 ¶ 7.) Defendant Turner documented her observations of Mr. Frye's conduct. (ECF No. 40-1 ¶ 8.)

However, on July 6, 2022, Defendant Turner, for a second time, "observed Mr. Frye again facilitating a three-way call . . . and learned that he had continued to violate facility rules and staff directives since June 9." (ECF No. 40-1 ¶ 9.) Defendant Turner "opted for the least restrictive response by having the number being used to facilitate the three-way calls blocked and again instructed [Mr.] Frye to stop." (ECF No. 40-1 ¶ 10.)

Defendant Turner recorded the incident in an Observation Note[9] that she drafted on July 6, 2022 ("July 6, 2022 Observation Note"), the same day that she observed Mr. Frye making another three-way call after being instructed to stop. (ECF No. 26-3, at 1.) The note stated:

> Event Description: On 6/9/22 this investigator documented three way calls being made by [Mr.] Frye. Resident Frye continues to make three way calls via telephone number 703-869-4038. The party that connects the three way call, connects him to an incarcerated female, Tabitha Whitlock. Ms. Whitlock is currently serving two sentences for second degree murder with 16 years to serve. Contact with correctional personnel has been made where she is held at the Bledsoe County Correctional Facility in Pikesville, TN. They have been made aware of our facility rules regarding third party communication.

---

[9] "An observation note is part of a detainee's treatment record and documents behavior, including behavior related to phase goals, behavior related to violations of rules and privileges, and refusals of medical appointments, medication, and meals." *Hairston v. Wilson*, No. 1:19cv862 (AJT/MSN), 2021 WL 2640803, at *1 (E.D. Va. June 24, 2021) (citation omitted).

8

> Since 6/9/22, [Mr.] Frye continues to violate facility rules and therefore, the telephone number (703-869-4028) has been blocked.
>
> VCBR Least Restrictive Techniques: Redirected resident.

(ECF No. 26-3, at 1.)

### B.  VCBR Annual Review Reporting Procedure

The VCBR conducts legally required Annual Review Reporting for each resident. (ECF No. 26-1.) Annual review reports are accompanied by "[s]upporting documentation," or "the resident's treatment contact notes, Master Recovery Plans, Quarterly Progress Reports, Review of Treatment Plains, Observation Notes, and other relevant documents that have accumulated since the resident's last annual review report, or since admission, if it is the resident's first annual report." (ECF No. 26-1, at 3.) The annual review reports are distributed to the resident's attorney, the Office of the Attorney General, and the state Circuit Court who civilly committed the resident. (ECF No. 26-1, at 3.) The annual review report contains a great deal of information, including current treatment status, attendance and participation, a summary of treatment progress, a summary of the risk for sexual and general recidivism, a summary of the interview with the resident, a comprehensive discussion of treatment status and suitability for conditional release, recommendations that the resident should meet before conditional release, and "[a] conclusion that includes the examiner's opinion regarding the resident's status as a Sexually Violent Predator and readiness for conditional release." (ECF No. 26-1, at 3–4.)

"If a resident disagrees with any factual information contained in the report, he/she must follow the procedure defined in *Facility Instruction 205(RTS) Resident Access and Amendment of Service Record* to request an amendment to the report." (ECF No. 26-1, at 4.) The Forensic Director and author of the report "shall review the request and determine whether there are factual or typographical errors that materially affect the accuracy or clarity of the report" and,

9

"[i]f such errors are found they shall be corrected in an addendum or letter . . . ." (ECF No. 26-1, at 4.) However, "[a] resident's disagreement with an examiner's expert opinion or interpretation of information shall not be considered a sufficient reason to issue an addendum." (ECF No. 26-1, at 4.) "If the resident's request to amend the record is granted, the resident must submit a written request to the Forensic Director and ask that the corrected information be reviewed." (ECF No. 26-1, at 5.)

### C.     Mr. Frye's Attempt to Amend the Observation Note

On July 7, 2022, the day after Defendant Turner observed Mr. Frye disobey her orders and continue to engage in three-way calls, Mr. Frye submitted a Request for Correction/Amendment of Services Record form asking for the July 6, 2022 Observation Note to be amended. (ECF No. 26-4, at 1.) Mr. Frye stated: "The Observation Not[e] is incorrect because it's impossible for me to 3-way call someone in prison. Furthermore, there is no policy preventing 3-way calls or conference calls, so no rule was violated. As such, the number that was blocked should not have been." (ECF No. 26-4, at 1.) In response to the query, "What do you believe the entry should state in order to be more accurate?" Mr. Frye stated: "The observation should have been documented as a recorded call where multiple voices were heard, making it nothing more than documentation because no proof of a 3-way, or a rule violation relating to a 3-way, exists." (ECF No. 26-4, at 1.) On July 13, 2022, the request to amend was denied, because the "[e]ntry was deemed, accurate, complete, pertinent, timely and necessary." (ECF No. 26-4, at 1.) At that point, Mr. Frye could "submit a statement of disagreement to the Records Department to be recorded in your services record." (ECF No. 26-4, at 1.) It is unclear if Mr. Frye submitted such a statement. The Request for Correction/Amendment of Services

10

Record form was filed in Mr. Frye's services record. (ECF No. 26-4, at 1.) The Observation Note was included in Mr. Frye's file for the annual review report. (ECF No. 26, at 2.)

Mr. Frye submitted to this Court a portion of his Annual Review Evaluation which was forty pages in length and then was updated in a twenty-three-page document. (*See* ECF No. 20-2, at 1; ECF No. 20-5, at 1.) On what appears to be page 28 of his Annual Review Evaluation is a note that states, "from an acute dynamic risk perspective, the resident has earned observation notes for violating VCBR policy this reporting period. The reader should also note that research trends suggest that noncompliance with supervision has the second largest effect size when predicting sexual recidivism." (ECF No. 20-2, at 1.) Mr. Frye also attaches page 32 of his Annual Review Evaluation, which indicates that Mr. Frye exhibits "[n]on-sexual criminality" which "may be strongly associated with resistance to rules and supervision," including that, "the resident's observation notes indicate that Mr. Frye has engaged in resistance to rules and supervision (e.g., notes dated 9/24 and 11/14) while at VCBR during the reporting period." (ECF No. 20-3, at 1.)

Thus, it is readily apparent from Mr. Frye's submissions that he received more than the one July 6, 2022 Observation Note that he contests here, including what appears to be "observation notes for possessing contraband or engaging in gambling." (ECF No. 20-4, at 1; *see also* ECF No. 20-5 (listing at least four Observation Notes written by staff between June 30, 2022 and July 15, 2022 alone). No portion of his annual review report submitted by Mr. Frye to this Court even mentions the July 6, 2022 Observation Note.

## IV. Analysis

Mr. Frye contends that Defendants violated his procedural due process rights in two ways. First, in Claim One, Mr. Frye argues that the procedure for Observation Notes creates a

11

risk of improper discipline that directly implicates a liberty interest in not remaining civilly committed indefinitely. Second, in Claim Two, Mr. Frye argues that he was denied procedural due process when the July 6, 2022 Observation Note[10], pertaining to three-way calls, was entered into his record without an adequate hearing and that because the judge who committed him reviews his record, this implicates a liberty interest in not remaining civilly committed indefinitely. As discussed below, Mr. Frye has no liberty interest in his treatment plan, and, specifically, in the procedure that authorizes use of Observation Notes. Therefore, the Due Process Clause is not implicated, and his claims lack merit.

### A. Due Process Standard

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the Constitution itself, or from state laws and policies. *Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005) (citations omitted).

"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). The U.S. Court of Appeals for the Fourth Circuit has explicitly "borrow[ed] from the pretrial-detainee context the standard for constitutionally impermissible 'punishment,'" and applied it those civilly committed. *Matherly v. Andrews*, 859 F.3d 264, 275

---

[10] Mr. Frye only challenges the July 6, 2022 Observation Note. (*See* ECF No. 1, at 6.)

(4th Cir. 2017). Thus, "civilly committed individuals are similarly entitled to procedural due process protections in connection with any punishment imposed on them." *Christian v. Magill*, 724 F. App'x 184, 188 (4th Cir. 2018) (citing *Dilworth v. Adams*, 841 F.3d 246, 251 (4th Cir. 2016); *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979))). However, it does not appear that Mr. Frye argues that he has been "punished" in any way by the issuance of an Observation Note. Instead, Mr. Frye argues that he was not provided with what he deems to be appropriate process before the July 6, 2022 Observation Note was entered in his record.

Evaluating Mr. Frye's due process claims requires a two-part inquiry, first, whether Mr. Frye has been deprived a liberty interest triggering procedural due process, and second, whether the procedures afforded Mr. Frye satisfied those rights. *See Dilworth*, 841 F.3d at 250–51. Defendants correctly assert that Mr. Frye fails to demonstrate that he has a liberty interest in his treatment plan and specifically, in the issuance of Observation Notes.[11] Therefore, as explained

---

[11] Notably, Defendants have not presented the most compelling discussion of how procedural due process functions here. Nevertheless, the Court acknowledges that Mr. Frye's arguments meander and the Fourth Circuit has not provided clear guidance in this area of the law. For example, in *Dillworth*, the Fourth Circuit determined that a pretrial detainee was "punished" or deprived of a liberty interest when he was placed in segregation. The Fourth Circuit explained that Dillworth "was entitled to due process before he was punished with disciplinary segregation," and then "turn[ed] to the question of whether the procedures afforded Dilworth satisfied Fourteenth Amendment requirements." 841 F.3d at 253. The Fourth Circuit decided that because Defendants did not follow disciplinary policy, and because Dillworth "was not provided a hearing before he was subjected to punishment," that Dilworth's due process rights were violated. *Id.* at 254–55. However, in *Christian*, the Fourth Circuit found that a civil committee's placement in segregation was punishment, but that "[b]ecause Christian received a disciplinary hearing a few days after placement [in segregation], prior to the imposition of the disciplinary action, we conclude that the actions of [sex offender treatment program staff] were not so egregious as to violate any right to due process that Christian possessed." 724 F. App'x at 188. However, in the cited cases the individual was "punished" by receiving disciplinary segregation and had a liberty interest in avoiding segregation, which is inapposite to facts of Mr. Frye's case because the blocking of someone else's phone number does not affect Mr. Frye's liberty interest.

13

below, because Mr. Frye lacks a liberty interest triggering due process, the Court need not turn to the second inquiry.

### B. Claim One

In Claim One, Mr. Frye argues that: "The procedures used by VCBR officials to issue and adjudicate disciplinary reports (observation notes) created a constitutionally untenable risk of improper discipline that directly affects the liberty interest of continued involuntary civil commitment." (ECF No. 1, at 7.) Although Mr. Frye refers to "procedures" in his statement of his claim, his challenge is focused specifically on one procedure—the use of Observation Notes to document misconduct or the failure to follow facility rules. As discussed below, the use of Observation Notes fails to implicate a liberty interest.

The Supreme Court has explained "that if state law creates a right that implicates a person's liberty, the individual possessing this right is entitled to 'those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.'" *Hill v. Jackson*, 64 F.3d 163, 170 (4th Cir. 1995) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). "A person must have more than an 'abstract need or desire [for a liberty interest to exist]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 170 (alteration in original) (quoting *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979)). Moreover, "[t]he ground for a constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with" finding an individual to no longer be an SVP. *Id.* (quoting *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)).[12]

---

[12] In *Hill v. Jackson*, the Fourth Circuit examined whether inmates had a liberty interest in parole release under the Virginia Code. 64 F.3d at 170. Because the law is scant for claims such as Mr. Frye's in the Fourth Circuit, the Court finds it appropriate to borrow from the parole

14

Under Virginia law, Mr. Frye has been adjudicated as a sexual violent predator by a Virginia Circuit Court and confined pursuant to section 37.2–900, *et seq.* of the Virginia Code, or the Sexually Violent Predators Act ("SVPA"). Each year, to justify Mr. Frye's ongoing civil commitment, the Commonwealth must prove by clear and convincing evidence that he remains a sexually violent predator. *See* Va. Code Ann. § 37.2–910 (West 2024). Otherwise, Mr. Frye is entitled to conditional release.[13] *See id.* In addition to placing the burden of proof on the Commonwealth, the SVPA affords individuals other procedural safeguards before civil commitment is continued. *See id.* The SVPA and its procedures required to commit and detain an individual as an SVP repeatedly have been held to comport with due process by the Supreme Court of Virginia and the federal courts.[14]

---

release context because the procedural due process jurisprudence for discretionary parole release squares with Mr. Frye's arguments. The SVPA may provide Mr. Frye with a liberty interest in *consideration* of his release from civil commitment, much like Virginia law gives rise to a limited liberty interest in *consideration* of release from parole. *Cf. Burnette v. Fahey*, 687 F.3d at 171, 181 (4th Cir. 2012). However, as *Hill* aptly explained, no liberty interest exists in the state-created procedural devices utilized for considering someone for discretionary parole. 64 F.3d at 170 (citation omitted). That proposition also extends to the state-created procedural devices for consideration of an individual for release from civil commitment.

[13] Mr. Frye has a liberty interest in not being indefinitely committed, or in other words, "a liberty interest in gaining release from detention if the reasons that justified the commitment no longer exist." *See Van Orden v. Stringer*, 927 F.3d 1162, 1167 (8th Cir. 2019) (citing *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975)).

[14] *See Townes v. Commonwealth*, 609 S.E.2d 1, 4 (2005) (explaining that SVPA's definitions must be "strictly construed" to comport with due process); *McCloud v. Commonwealth*, 609 S.E.2d 16, 21–23 (Va. 2005) (reviewing in detail "the procedures of the SVPA as well as the standards to be applied in the trial court in considering whether to commit a person determined to be a sexually violent predator" because of "the potential loss of a prisoner's liberty" and finding they satisfied due process); *Commonwealth v. Allen*, 609 S.E.2d 4, 12–13 (Va. 2005) (explaining that to satisfy due process, the Commonwealth must demonstrate "clear and convincing evidence" that an individual is an SVP under the SVPA).

Similarly, federal courts in Virginia have consistently held that the SVPA comports with due process. *See Brown v. United States*, No. 7:21–cv–00026, No. 7:21–cv–00031, 2021 WL 262053, at *3–4 (W.D. Va. Jan. 26, 2021) (holding that the SVPA and "its definitions and proof

Here, however, Mr. Frye's challenge is not directed toward his annual review by the Circuit Court to determine whether he remains an SVP. Instead, Mr. Frye argues that the use of Observation Notes to document misconduct or his failure to abide by facility rules deprives him of liberty without due process. Simply put, and as Defendants correctly argue, Mr. Frye has no liberty interest in the treatment procedure that authorizes the use of Observation Notes. While Mr. Frye may have some interest in consideration generally of whether he should be released from civil commitment, "it is clear that there is no 'protected *liberty* interest in the *procedures themselves*, only in the subject matter to which they are directed.'" *Hill*, 64 F.3d at 170 (quoting *Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993) (first emphasis added, second emphasis in original)). Rather,

> Process only assumes significance in a context. The notion that naked process itself takes on constitutional dimensions has most troublesome implications. Courts have explicitly and repeatedly rejected the proposition that an individual has an interest in a state-created procedural device, such as a hearing, that is entitled to constitutional due process protection. The Supreme Court itself has recognized that an "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983) . . . . As other circuits have found, the mere fact that the government has established certain procedures does not mean that the procedures thereby become substantive liberty interests entitled to federal constitutional protection under the Due Process Clause. . . . .

---

requirements" pass constitutional muster (citing *Kansas v. Crane*, 534 U.S. 407, 409, 412–13 (2002); *Shivaee v. Commonwealth*, 613 S.E.2d 570, 576–77 (Va. 2005)); *Lopez-Flores v. Clarke*, No. 3:18CV83–HEH, 2019 WL 982854, at *4 n.2 (E.D. Va. Feb. 28, 2019) (explaining that the term "sexually violent predator" is not unconstitutionally vague (citing *Shivaee*, 613 S.E.2d at 577)); *Turner v. Herrick*, No. 1:10cv781 (CMH/JFA), 2011 WL 3320820 (E.D. Va. July 29, 2011) (holding the SVPA satisfies the elements set forth by the Supreme Court for a civil commitment statute to survive due process challenge (citing *Crane*, 534 U.S. at 409, 412–13; *Shivaee*, 613 S.E.2d at 576)), *aff'd* 465 F. App'x 250 (4th Cir. 2012).

*Brandon v. District of Columbia Bd. of Parole*, 823 F.2d 644, 648–49 (D.C. Cir. 1987) (citations omitted).[15] The Court must conclude that Mr. Frye has no liberty interest in the underlying procedure for determining whether he is ready for release, and, specifically, in the use of Observation Notes. *Cf. Id.* at 649 (holding "that the procedures adopted by the state to guide its [SVP commitment determinations] are not themselves liberty interests entitled to constitutional due process protection"). Thus, because Mr. Frye identifies no protected liberty interest, his due process claim lacks merit.[16] Accordingly, Claim One will be DISMISSED.

### C. Claim Two

In Claim Two, Mr. Frye contends that:

> Defendant Turner violated Plaintiff's Fourteenth Amendment constitutional right to due process[ ] by issuing him an observation note and penalizing him without an adequate hearing. . . . Because each observation note goes to the Attorney General and the judge who committed the Plaintiff to involuntary commitment, it effectively serves as something that can and does affect when he will be released from confinement.

(ECF No. 1, at 7.) As explained in Claim One above, Mr. Frye has no liberty interest in his treatment plan and the procedures adopted by the Commonwealth to determine whether he should be released from civil commitment. *Cf. Hill*, 64 F.3d at 170; *Brandon*, 823 F.2d at 649. Therefore, his claim that due process requires a hearing before receiving an Observation Note

---

[15] In *Hill*, the Fourth Circuit quoted extensively from *Brandon* including much of the above quoted text. *See Hill*, 64 F.3d at 171. Here, the Court cites directly to *Brandon* without the Fourth Circuit's omissions because it provides a more thorough statement of the law.

[16] Mr. Frye fails to direct the Court to any state statute or regulation governing the use of Observation Notes that could even remotely create a liberty interest. *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (explaining that "[s]tate laws create a liberty interest only when the statute's language 'plac[es] substantive limits on official discretion'" (quoting *Olim*, 461 U.S. at 249)).

17

cannot be sustained.[17]  For this reason alone, Claim Two may be dismissed.

While it seems that Mr. Frye only intends to raise a procedural due process claim, Mr. Frye also fails to demonstrate that he has been "punished" through the submission of the July 6 Observation Note in his annual review file.  Mr. Frye vaguely suggests that this July 6, 2022 Observation Note is included in his annual review file and the Circuit Court could see it in its determination of whether Mr. Frye was fit for release.  The record demonstrates that Mr. Frye received many Observation Notes for violating rules, and all of these Observation Notes would have been included in his annual review file.  The one-page print-out that Mr. Frye included with his submissions shows that Mr. Frye had four Observation Notes about his failure to follow rules entered into his record between June 30, 2022 and July 15, 2022 alone.  (*See* ECF No. 20-5.)  Therefore, the record establishes that the issuance of one Observation Note reporting Mr. Frye's refusal to listen to orders of staff and continuing to make three-way calls was *de minimis* and cannot amount to punishment sufficient to invoke due process protections.  *See Dilworth*, 841 F.3d at 252) (citing *Robles v. Prince George's Cty., Md.*, 302 F.3d 262, 269 (4th Cir. 2002); *Slade v. Hampton Rds. Reg's Jail*, 407 F.3d 243, 252 (4th Cir. 2005); *Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004))).  Mr. Frye fails to demonstrate that the July 6, 2022 Observation Note, standing alone, amounts to punishment.[18]

Moreover, "[a]bsent a showing of an expressed intent to punish on the part of detention facility officials, if a particular condition or restriction is reasonably related to a legitimate

---

[17] Under the policy for observation notes, Mr. Frye was entitled to an seek an amendment of the Observation Note.  Mr. Frye sought such an amendment, but the request was denied.  Under the policy, he was not entitled to a hearing.

[18] At most, Mr. Frye's only punishment was that staff blocked the number he used to three-way call.  Once again, this restriction is *de minimis* and cannot amount to punishment sufficient to invoke due process.

governmental objective, it does not, without more, amount to 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 538–39, (1979); *see Dilworth*, 841 F.3d at 252. The Commonwealth's purpose in holding Mr. Frye is "for the control, care, and treatment until such time as the respondent's mental abnormality or personality disorder has so changed that the respondent will not present an undue risk to public safety." Va. Code Ann. § 37-2–909 (West 2024). The Constitution affords detention centers, under the expertise of mental health professionals, "wide latitude to set the conditions of treatment for civil detainees." *Matherly*, 859 F.3d at 275 (citing *Youngberg*, 457 U.S. at 321).

Here, it is undisputed that Mr. Frye ignored staff orders to stop making three-way calls to a female inmate. Thus, the Observation Note was founded. Mr. Frye's annual report notes that he has unhealthy relationships with people and engages in multiple relationships with women. Mr. Frye's treatment seeks to teach the formation of heathy relationships and the following of rules. Including this Observation Note in a forty-plus page annual review report that contained many other assessments and recommendations, is reasonably related to VCBR's legitimate interest in Mr. Frye's recovery. *See Hairston*, 2021 WL 2640803, at *3. To the extent that Mr. Frye raises a substantive due process claim, the receipt of one Observation Note does not amount to punishment.

For the reasons stated above, Claim Two lacks merit and will be DISMISSED.[19]

### V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment, (ECF No. 25), will be GRANTED. Mr. Frye's Motion for Summary Judgment, (ECF No. 19), will be DENIED

---

[19] Finding that Mr. Frye's claims lack merit, the Court need not address Defendants' immunity arguments.

because his claims lack merit. Mr. Frye's claims will be DENIED. The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 8/22/2024　　　　　　　　　　　　　　　　　　/s/
Richmond, Virginia　　　　　　　　　　　　　　　M. Hannah Lauck
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge